**STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER,** Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 5239.

United States Court of Appeals First Circuit.

Heard June 5, 1957.

Decided June 28, 1957.

---

H. Brian Holland, Boston, Mass., with whom Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., was on brief, for petitioner.

David O. Walter, Atty. Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Ellis N. Slack, and I. Henry Kutz, Attys. Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition brought by State Mutual Life Assurance Company of Worcester for review of a decision of the Tax Court of the United States, entered December 19, 1956, determining a deficiency in its income tax in the sum of $1,970.67 for the year 1950.

The facts, which have been stipulated by the parties, are as follows:

Petitioner, a mutual life insurance company incorporated under the laws of the Commonwealth of Massachusetts, owns its home office property in Worcester, Massachusetts, consisting of a nine-story office building and annex thereto and nearby parking areas. In 1950, 46.768% of the rental value of petitioner's home office property was rented to tenants, and 53.232% was occupied by petitioner. Of the part occupied by petitioner, 20.02% was used by petitioner in its investment operations. In its federal income tax return for the year 1950, petitioner reported rental income from its home office property in the amount of $201,407.95, which represented the difference between the gross fair rental value of the property of $430,648.88 and the fair rental value of the portion occupied by petitioner of $229,240.93.

Repairs and expenses on the home office property in 1950 amounted to $216,501.52, real estate taxes to $141,344.32 and depreciation to $74,701.54. Of these amounts, petitioner deducted 46.768%, or a total of $202,293.75, as being chargeable against income from the portion of the property rented to others. In addition, it deducted 20.02% of the balance; or a total of $46,096.78, as being allocable to its investment operations. Respond-

ent allowed the deductions chargeable against income from rented space, but disallowed those allocated to investment operations.

With respect to the portion of the home office property which it occupied, petitioner also incurred in 1950 building alteration expenses of $7,350.17 and building service department expenses of $11,879.43. Since 20.69% of the total salaries paid in 1950 was charged to investment operations, petitioner allocated 20.69% of the alteration and service department expenses to those operations and deducted a total of $3,978.60 on account of such expenses. These deductions were also disallowed by respondent.

Petitioner appealed to the Tax Court from respondent's determination of a deficiency of $1,970.67 in its 1950 income tax, based on disallowance of the several deductions which have been described. The parties stipulated that if the Tax Court should find that petitioner was entitled to the deductions, the amounts thereof were not disputed. On December 18, 1956 the Tax Court rendered an opinion holding that the deductions were not allowable under the relevant statutory provisions, and on December 19, 1956 it entered its decision sustaining the deficiency as determined by respondent. Petitioner filed a petition in this court on March 11, 1957 for review of the Tax Court decision.

It has been agreed by the parties that the only question before this court is whether petitioner was entitled to deduct as investment expenses in 1950 those portions of the real estate taxes, other expenses and depreciation in respect of its home office property which were allocated to the space used by petitioner in its investment, as distinguished from underwriting, operations.

The issue in the instant case is solely one of statutory interpretation. The statutory provisions involved are as follows:

Internal Revenue Code of 1939:

"§ 201. *Life insurance companies*

\* \* \* \* \* \*

"(c) *Other definitions.* In the case of a life insurance company—

"(1) *Gross income.* The term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents.

\*　\*　\*　\*　\*　\*

"(7) *Net income.* The term 'net income' means the gross income less—

\*　\*　\*　\*　\*　\*

"(B) *Investment expenses.* Investment expenses paid during the taxable year. If any general expenses are in part assigned to or included in the investment expenses, the total deduction under this subparagraph shall not exceed one-fourth of 1 per centum of the mean of the book value of the invested assets held at the beginning and end of the taxable year plus one-fourth of the amount by which net income computed without any deduction for investment expenses allowed by this subparagraph, or for tax-free interest allowed by subparagraph (A), exceeds 3¾ per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year;

"(C) *Real estate expenses.* Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company, not including taxes assessed against local benefits of a kind tending to increase the value of the property assessed, and not including any amount paid out for new buildings, or for permanent improvements or betterments made to increase the value of any property. The deduction allowed by this paragraph shall be allowed in the case of taxes imposed upon a shareholder of a company upon his interest as shareholder, which are paid by the company without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes;

"(D) *Depreciation.* A reasonable allowance as provided in section 23 (1), for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence.

"(d) *Rental value of real estate.* The deduction under subsection (c) (7) (C) or (c) (7) (D) of this section on account of any real estate owned and occupied in whole or in part by a life insurance company, shall be limited to an amount which bears the same ratio to such deduction (computed without regard to this subsection) as the rental value of the space not so occupied bears to the rental value of the entire property. \* \* \*." 26 U.S.C.A. § 201.

Petitioner's right to deduct portions of the real estate taxes, other expenses and depreciation in respect of its home office property which were allocated to the space used by petitioner in its investment operations, if it exists, must rest upon the above statutory provisions. As was stated in New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."

Here, as the Tax Court observed, there is specific statutory authority for a deduction by a life insurance company of the real estate taxes, other expenses and depreciation with respect to the real estate owned by the company. It is found in §§ 201(c) (7) (C) and 201(c) (7) (D) of the Code. But these deductions are expressly made subject to the limitation found in § 201(d).

Section 201(d), by limiting the deductions for real estate taxes, other expenses and depreciation with respect to real estate owned and occupied in whole or in part by a life insurance company to an amount which bears the same ratio to such deductions as the rental value of the space not so occupied bears to the rental value of the entire property, results, as the Tax Court stated, "in lessen-

ing the deduction for real estate expenses and depreciation granted under sections 201(c) (7) (C) and 201(c) (7) (D), by the arithmetical equivalent of the so-called rental value of the space occupied by the company."

Applying the § 201(d) limitation formula within the meaning of its plain terms, it seems to us that a life insurance company, such as petitioner, is not permitted to deduct its real estate taxes, other expenses and depreciation with respect to *any* portions of its real estate which it owns and occupies. We believe that this is so because Congress, in prohibiting under § 201(d) the deduction of these items attributable to space occupied by the company, did not make any qualification as to the nature of the activity there carried on by the company. Were we to ingraft into § 201(d) an exception concerning real estate taxes, other expenses and depreciation allocable to portions of a life insurance company's real estate used in its investment operations, as petitioner urges us to do, we would be trespassing upon the legislative function, especially since Congress by the enactment of § 201(d) has spoken in plain and unambiguous language. See Dragon Cement Company, Inc. v. United States of America, 1 Cir. 244 F.2d 513.

Aside from its argument that § 201(d) should be construed to permit the deductions in question under §§ 201(c) (7) (C) and 201(c) (7) (D), petitioner alternatively argues that the deductions are allowable as "investment expenses" under § 201(c) (7) (B). As to this contention, we believe that the statute on its face, read in the light of established principles of statutory interpretation, demonstrates its invalidity. Section 201(c) (7)

(B) is a broad, general statement covering investment expenses; §§ 201(c) (7) (C) and 201(c) (7) (D) deal specifically with two limited kinds of expenses. The controlling rule of interpretation in this situation was set out in D. Ginsberg & Sons v. Popkin, 1932, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704:

> " * * * General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117. Specific terms prevail over the general in the same or another statute which otherwise might be controlling. Kepner v. United States, 195 U.S. 100, 125, 24 S.Ct. 797, 49 L.Ed. 114; In re Hassenbusch, 6 Cir., 108 F. 35, 38; United States ex rel. Kelley v. Peters, D.C., 166 F. 613, 615. * * "

Here, Congress specifically dealt with real estate taxes, expenses and depreciation under §§ 201(c) (7) (C) and 201(c) (7) (D), thereby removing them from the application of the general language of § 201(c) (7) (B).[1] Petitioner would have us, in a sense, read §§ 201(c) (7) (C) and 201(c) (7) (D) out of the statute, because it does not like the limitation on these sections contained in § 201(d). But the sections are there and we believe that they must be given effect.

Petitioner, in pressing its arguments upon us, seems to assert that the Tax Court's interpretation of the statutory provisions here involved produces an anomalous or inequitable result, at variance with the policy of the legislation as a whole. In this connection petitioner

---

1. Petitioner's argument to this effect, as pointed out by respondent in his brief, overlooks the fact that in any event depreciation is not deductible under § 201 (c) (7) (B). In this connection we agree with the statement in 8 Mertens, Law of Federal Income Taxation, § 44.38 (1942): " * * * Quite aside from the question whether the specific provisions in the act for such deductions might indicate that deductions for depreciation and real estate expenses were not intended to be allowed as investment expenses, depreciation allocated to investment expenses upon the basis of space occupied by the investment department in a building owned by the company cannot be deducted under the provision considered in this section for depreciation is not an expense 'paid' during the taxable year." See also Metropolitan Life Insurance Co., 1927, 8 B.T.A. 938.

claims that since life insurance companies are taxed on their investment income, they should be allowed to deduct real estate expenses and depreciation on the space properly allocable to their investment departments, just as they are allowed to deduct salaries, postage, printing costs, general overhead and other similar expenses fairly chargeable to investment income.[2]

Such an argument, as the Tax Court noted, "is foreclosed by [the rule] that he who seeks a deduction must find statutory authority therefor." For "[u]nquestionably Congress has power to condition, limit, or deny deductions from gross income in order to arrive at the net that it chooses to tax." Helvering v. Independent Life Ins. Co., 1934, 292 U.S. 371, 381, 54 S.Ct. 758, 760, 78 L.Ed. 1311.

Nor can we obviate the above rule by resort to "general equitable considerations." The Supreme Court has recently reiterated the principle, equally applicable here, that:

"We deal here with a deduction which one obtains not as of right, but as of grace. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416. The taxpayer has the burden to show that it is within the provision allowing the deduction. * * * This taxpayer argues the inequity of the results which would follow from our construction of the Code. But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible. * * * We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit. * * *" United States v. Olympic Radio & Television, 1955, 349 U.S. 232, 235-236, 75 S.Ct. 733, 736, 99 L.Ed. 1024.

Likewise, we believe that "general equitable considerations" do not control the question of what deductions are permissible in the instant case and that the words of the statutory provisions herein involved permit only the construction given them by the Tax Court. If " * * * changes in the law are desirable * * *, Congress must make them." U. S. v. Olympic Radio & Television, supra, 349 U.S. at 236, 75 S.Ct. at page 736.

Moreover, the fact that ordinarily real estate expenses and depreciation allocable to property which is owned and occupied by a life insurance company and used in its investment operations would have a relation to the company's taxable income, does not lend special force to petitioner's contentions discussed above. Nor does the fact that in other businesses such items are allowed as deductions when they are related to the taxable income. For, as the Tax Court observed, due to "the character of the life insurance business it has, since 1921, been taxed under special provisions. * * * The whole history of legislation governing the taxing of life insurance companies' income shows, that from the outset, insurance companies have been taxed differently from ordinary commercial enterprises. [See Mertens, supra, § 44.42]. Prior to 1921, life insurance companies were taxed not only upon investment income but also upon premium income. The Revenue Acts of 1921 and 1926 provided for a tax on investment income from interest, dividends, and rents, with deductions chargeable against such investment income. However, under these Acts, in order to permit a deduction for real estate expenses and depreciation owned or occupied in whole or in part by the company, the company was required to return in gross income an

2. We, note, although not in issue here, that "general expenses * * * assigned to or included in the investment expenses" can only be deducted subject to the limitation in § 201(c) (7) (B). See New World Life Ins. Co. v. United States, 1939, 26 F.Supp. 444, 88 Ct.Cl.

405, affirmed per curiam 1940, 311 U.S. 620, 61 S.Ct. 314, 85 L.Ed. 393; Commissioner of Int. Rev. v. Volunteer State L. Ins. Co., 6 Cir., 1940, 110 F.2d 879, certiorari denied Volunteer State Life Ins. Co. v. Helvering, 1940, 310 U.S. 636, 60 S.Ct. 1080, 84 L.Ed. 1405.

amount which, when added to rents received from tenants, would, after certain deductions, provide a net income of 4 per cent per annum of the book value, at the end of the year, of the real estate so owned or occupied. (Revenue Act of 1921, sections 245(a) (6) and (7), 245 (b); Revenue Act of 1926, section 244)."

From the above it will be seen there has been, since 1921, a restriction or limitation on the taking of a deduction for real estate expenses and depreciation on property owned and occupied by a life insurance company. In 1932 Congress enacted, in substance, the statutory provisions which we are asked to construe here. Our holding that these provisions do not allow the deductions in question, notwithstanding that these deductions are related to the realization of taxable income, does not present an "anomalous" situation, as petitioner contends. Rather, it seems to be consistent with the pattern of specific tax treatment that Congress, since 1921, has given property owned and occupied by life insurance companies. In any event the plain words of the statutory provisions and their legislative history, although we do not believe resort thereto is necessary here, do not clearly suggest, much less compel, any other holding.

Finally, we believe petitioner's reliance on Rockford Life Ins. Co. v. Com'r, 1934, 292 U.S. 382, 54 S.Ct. 761, 78 L.Ed. 1315, and Manufacturers Life Insurance Co., 1941, 43 B.T.A. 867, is unwarranted. In the Rockford Life case it was held a life insurance company could deduct depreciation on furniture used in its investment department. That decision, as the Tax Court pointed out, is not inconsistent with our decision in the instant case, since Congress did not specifically limit the depreciation of personal property in § 201(d), as it did the depreciation of real property. The Manufacturers Life case is also distinguishable. There, the taxpayer, because of default on farm mortgages, operated certain farms itself in 1932 and 1933. In holding that real estate taxes on the farm property were deductible as investment expenses, the Board seemed to emphasize that the operation of the property by the company was a temporary matter forced upon it by the economic conditions of the day. In this connection the Board stated that the taxpayer was "forced to operate the property itself" because it was "unable to find a desirable tenant or purchaser." Manufacturers Life Insurance Co., supra, 43 B.T.A. at 876. Here we have no temporary circumstances compelled by economic necessity. Furthermore, the Manufacturers Life decision could properly be distinguished on the ground that occupation of the property by a life insurance company for purposes of farming was not the kind contemplated by the language in § 201(d).

A judgment will be entered affirming the decision of the Tax Court.